Good morning, your honors. May it please the court, I'm Katherine Lewis, appearing on behalf of the petitioner Iqbal Singh. Since none of the alleged indiscrepancies cited by the immigration judge can be supported by substantial evidence, this court must reverse the immigration judge's adverse credibility finding. Several of the alleged inconsistencies cited by the immigration judge are based on pure speculation. One of the immigration judge's main focuses is Mr. Singh's testimony about a religious event that, quote, should have been very meaningful to him, and that's at best. Are you talking about credibility both as it applies to the request for asylum and withholding of deportation? Because, you know, the request for asylum was filed apparently one year late. And I am talking about the as it applies to both asylum and withholding. As far as the one-year issue is concerned, Mr. Singh filed within the one year, and the immigration judge made her decision on the one-year issue based largely on her adverse credibility decision. Was there any documentation? Mr. Singh did have a letter from a gurdwara that indicated when he entered, but really the heart of her adverse credibility decision or the heart of the one-year decision was the- A letter from who? A gurdwara where he had gone when he first entered the United States, Your Honor. And so the immigration judge's finding on the one-year issue turned largely on her adverse credibility finding. Therefore, I think that issue is still in play in this case. Do you have jurisdiction over that issue? I believe so, Your Honor. The government argued that the issue was waived. We did note in the conclusion to our opening brief that this court, if they address the adverse and reverse the adverse credibility finding, should also instruct the board to reconsider the timeliness finding. But I'd also point out, as we said in our 28J letter, that at the time this was initially briefed in April of 2005, this court did not have jurisdiction over that claim. The Real ID Act was subsequently passed May 11th of 2005, which restored jurisdiction. So I think there's also- It restored jurisdiction over factual questions, but how is that a question of fact, or rather a question of law? I think that it could be considered a question of law because the immigration judge's analysis, she speculated and she substituted her speculation for clear evidence, and so this was a legally erroneous decision on the adverse credibility, and therefore I believe it is a legal issue. That would make every question of fact arguably a legal question. If you say, well, that's a wrong decision, what makes this a uniquely legal question? Why isn't that a factual determination? I believe because here it wasn't just a weighing of evidence issue. The judge was actually erroneous in engaging in the speculation, Your Honor. Well, erroneous in the factual conclusions drawn, but I'm still not sure what the legal defect is. You can say, well, it's a wrong decision, so that's defective. But if it's a factual decision, then I query what's the basis for our jurisdiction into a factual determination. I would, you know, still argue that in the first instance it would be if the adverse credibility finding were reversed, just based on the principles of Thomas V. Gonzales, where the administrative agency is the person to first decide these factual issues, they should be the one, if the adverse credibility determination were reversed, to then apply to see, okay, in light of the credible testimony, reevaluate the evidence, and they would be the appropriate agency to make that determination. I'll make this the last time, but what makes that a question of law? The REAL ID Act restores the jurisdiction for questions of law, and you're basically saying, well, they should be revisiting this determination of fact. Why is that a question of law? And, you know, again, I would, I guess, argue on this point, you know, that an opportunity to brief this issue, since the parties weren't able to brief it in its entirety, might be the most appropriate course. Again, I, you know, argue that this issue should be remanded to the board. As to withholding of removal, is there sufficient here to grant a withholding of immune removal, even if we were to believe everything that Mr. Singh said? I think at that point the appropriate course would be to remand to the board, because it's clear the immigration judge nor the board looked at, did an underlying analysis as to the withholding claim. It was entirely based on the adverse credibility, so I think that a remand would be appropriate, Your Honor. Turning to the alleged inconsistencies cited by the immigration judge, I'll point out that one of her main focuses is Mr. Singh's testimony, again, about this Basaki Day events. The immigration judge clearly engaged in speculation about how Mr. Singh should have felt about this holiday. He attempted to explain the holiday but was constantly interrupted by the immigration judge and was prevented from elaborating. In addition, he had a reasonable explanation for not knowing all of the details of this holiday. He didn't, in fact, attend, and his father was kidnapped and killed during the course of this holiday, so it is obvious that he was preoccupied at that time. Thus, the immigration judge's adverse credibility point on that is not supported by substantial evidence. In this case, the immigration judge's analysis was very long and thorough, which is different than a lot of things that we get here. How do we find that that meets the requirements under withholding of removal and convention against torture when we have to find this more likely than not? Well, I don't know that... Higher standard. Yes, Your Honor. I don't know that this Court can reach the question about more likely than not because the adverse credibility decision is the whole basis of the immigration judge and BIA's... But if we look at Mr. Singh's version, is there sufficient there to grant withholding of removal? I mean, absolutely, Your Honor. I would argue that the country conditions evidence and his testimony is able to support a withholding of removal and more likely than not finding, though I don't know that that could... Why is that? What would you point to? To the fact that his father was kidnapped and murdered on account of his activism in the Kali Dalman party. And in addition, Mr. Singh... On account of the father's activism, not the son's. Right. But Mr. Singh was then arrested for considering filing a complaint about a month after this death. He and his mom were both arrested. He was in police custody and beaten and tortured for a few days during that time on account of this affiliation. And the country conditions evidence in the record make clear that this was standard course, that young Sikh males were more likely to be targeted. And the police used lists of people in this movement to round up and interrogate suspects, sometimes in the hundreds, and this is at page 473. And so I think... Sometimes in the hundreds probably wouldn't amount to more likely than not by itself, given that we're talking about millions of people. I understand, but there weren't millions of people involved in the movement or affiliated with families who were very active in this movement. So I do think that if you look at the country conditions evidence and Mr. Singh and the fact that he was, in fact, targeted by the police, I do think this court would have to conclude that there is evidence to suggest that withholding of removal is appropriate in this case. And I'd like to reserve some time, Your Honors. Thank you. Thank you. Thank you, Your Honors. Ms. Lewis, and may it please the Court, I'm Joseph Hardy, appearing for the Attorney General. Substantial evidence supports the immigration judge's decision and the board's decision. If I can, I'd like to just put it in some perspective. If you'll notice in the brief, we point out the asylum profile on claims by Sikhs coming from India. Sikhs comprise about 2% of India's approximately 1 billion people. In the Punjab state where Mr. Singh is from, they're about 65% of the population. Interestingly, about 65% of the, as this Court knows, and I'm sure Judge Roth, you know from the Third Circuit, a lot of the claims that we get from India are 65, or actually 80% of the claims that we get from India are people claiming to be Sikhs who are persecuted because of imputed political opinions or political opinion. This case is no different than a lot of the cases. They're usually decided on adverse credibility grounds. And I'd like to just point out that this Court's case law under Wong, which is cited in both sides' briefs, and Lee v. Ashcroft, the 2004 decision, only require that the immigration judge cite one substantial factor that goes to the heart of the alien's claim. And it's beyond dispute that the issue here is whether Mr. Singh was persecuted on account of his father's activities following his father's death. And counsel or petitioner says that the immigration judge was fixated on this Vaisakhi Day. If you look at, we note in the brief at page 618, the asylum profile, the State Department says that when the immigration judges are looking at these decisions, we should be looking to see whether the people know about particular holidays in which they try to relate their claims. And in this decision, you'll see that Mr. Singh was saying that his father was died the day before Vaisakhi Day. Well, Vaisakhi Day is not a single day. It's a festival. As the immigration judge noted, it was held that year because it was the 300-year anniversary over a number of days. So for him to say that it was before one day, causing the question whether this really happened. But is there any question but that Mr. Singh's father was murdered? Yes, there is. We have no – only evidence we have is Mr. Singh's testimony that his father was killed by the police on account of his – apparently on account of his activities with the Kalidaw man. There is evidence in the record. He submitted a membership letter. I note that it's not a membership card that the father had throughout the years. It was a letter that he got from his mother for this litigation to say, you know, mother, can you please get someone to get a letter about dad's membership in the Kalidaw man. And I'd like to note that this letter says absolutely nothing about his father being killed. It says the father was a member of a Kalidaw man. It says Mr. Singh is his son. But if his father was killed, if he was such a prominent member in the Kalidaw man in their region and the father was killed on account of this activity, you would think that that letter that he got for this litigation would say, you know, I believe his name is Basir Singh was killed on April 19th, you know, for helping us out. And there's nothing in the record other than his testimony that says that. Even the death certificate that was submitted. The father, I note, was found under a bridge on April 19th. But the death certificate says that he died on April 19th. You would think that the letter would say, you know, the day he died was unknown because they didn't know the day he died. The letter also doesn't say the cause of death. And the asylum profile points out that a lot of these claims, the aliens either misstate facts or they leave out significant parts of a claim that would actually negate their claim for withholding of removal. Well, there's no question the father was dead, right? There's no question that the father was dead. We just don't know how the father died, why the father died or even when the father died. The father being found under the bridge. He was found under a bridge and he was beaten. We don't know other than Mr. Sinks. I'm sorry. We do know that he was found under the bridge and was beaten. We do know that he was found on April 19th under a local bridge beaten. We don't know, as I said, who did it other than by Mr. Singh's testimony. And Mr. Singh himself, he said he wasn't there. The father was allegedly abducted the day before. What he says is Pasakhi Day, but Pasakhi Day is not a day. It's a series of days. The immigration judge submitted. The letter from the mother said what? That's one thing. There is no letter from the mother. And he's gotten a number of letters or a number of documents through his mother. The one thing that he has not submitted is a letter from his mother. Okay. That's easily. The letters that the mother provided said what? The mother obtained apparently a letter from the Akali Dalman saying that Mr. Singh, the older Mr. Singh, the father, was a member of Akali Dalman. It does not say that the father even died. I believe it said he was deceased. So there's the assumption that the father is dead. It doesn't say how the father died or that the father died in connection with anything that had to do with Akali Dalman. And the notion is that he was killed or that Mr. Singh, Iqbal Singh, the petitioner here, was jailed in May on account of his father's activities. They didn't want him to report the father's death. Well, we have no idea. The immigration judge had absolutely no idea why he was persecuted. And, you know, requiring corroboration requires more. It could be because the immigration judge found him less than candid or the immigration judge just didn't know what to believe. And if you. Some of her speculation really seemed to be unfounded. Like, well, he says he's responsible for supporting the family. Why isn't he supporting the family? He says he's responsible for supporting the family. Why isn't his sister supporting the family? Well, I think for her to assume in an entirely different culture that the sister would have an equal responsibility to support the family as the brother does, I don't see any basis for that. I think that's a fair assessment. The immigration judge, I don't think, was so much concerned about whether he was the supporting the family. No, she gave that as one of the. She did point that out. Yes, Justice Breyer. Pure speculation. And you wonder how much of the rest of what she said was pure speculation. I think she brought up the. Judge Weber has been doing this for 33 years, if I may add. Well, there's some immigration judges who have been doing a not very good job for a long period of time, too. If I may, Judge Weber, I think, pointed out the gender gap or his bringing up the gender issue. And he made a point to say his mother and he were both arrested. The mother was released on that day without paying a bribe. He was arrested. He says he was tortured and that he was detained for three days. Well, both arrests were because, allegedly, the police didn't want him and his mother to report the incident, apparently, to them. The question is, well, what makes him so different than the mother or the sister? The sisters weren't arrested at all. The mother was arrested, but she was released after a day. He didn't put up any resistance, if you notice, during his detention. What makes him so special? For the first time, they raised in the reply brief that the issue was, well, the police, when they go around, they're usually looking for ‑‑ they assume that young men are terrorists. Well, that's not the basis of your claim. The claim was that they arrested you. Most terrorists are young men. Most terrorists are young men, but that's not the claim here. A Kalidaw man is actually one of the political groups in India that are a nonviolent group that have advocated ‑‑ Is there sufficient for withholding a removal in this case? There is not. As I said, the immigration judge only needs to cite one substantial factor that goes to the heart of the claim, and the questioning of him of the Bisaki Day. You would think that, okay, this is the last day that you saw your father. You should know specifics about the incidents surrounding your father's day. It was a big day. It was the 300th anniversary, you know, and your holiday. You should know. You say you go to church when you were in your hometown three times a week. When you were in Delhi, you went to church three ‑‑ or, excuse me, Gurdwara three times a week. When you were in the United States, you went three times a week. You should know the specifics surrounding your father's death, and I think that was one of the things the immigration judge noted. The lack of specificity when it came to issues that were outside of the asylum application, and it's not unsimilar to this case decision and Singh Kaur, the 99 decision. The alien couldn't say much about his claim outside of what happened in a newspaper article that he submitted, and I see that my time has expired. Let me ask you about one specific thing. With regard to the jurisdiction over the asylum claim, you heard the petitioner argue that at the time the opening brief was filed, the Real ID Act had not been passed to give us jurisdiction over a question of law. What's your response to that? I think the ‑‑ normally I would argue that citing a line in your conclusion that, you know, if you remand this, you should reconsider the timeliness issue again. I would say that that's not raising it. It's raised, but you didn't argue it. So, to be honest, I hesitate to answer it because I don't want to waive the waiver argument, but the fact is she did raise it in the conclusion. She didn't argue it. And, you know, to say that, well, now Real ID applied, it's still not a question under Ramadan. And the 28J letter counsel cites the Salah decision. It's still a question. There's no corroboration. The only letter that says that he entered ‑‑ We have jurisdiction to consider this issue. You do not. And I'd like to point out, it's still ‑‑ it's in dispute whether when he came into the country, we actually don't even know if he really is who he is. You say he entered as someone named Satnan Singh as opposed to Iqbal Singh, but we have nothing that says when he came in. We don't even have a fraudulent passport to say that he came in or anything like that. You are arguing the merits, but it's your position, do we have jurisdiction or not? Well, the court lacks jurisdiction because it's a factual question. It's not a mixed question of law. So I'm saying we don't ‑‑ it's disputed when he came into the country. You can't even say that you entered at a certain time because we don't even know who you are. You have no proof. You got things from your mother. You got no birth certificate or anything. So, you know, once again, I would argue that the claim was waived because you didn't raise it or you didn't argue it. So do you have jurisdiction? You do not have jurisdiction. Thank you. Without any further questions, I think I'll sit. Thank you. Roboto. Thank you, Your Honors. I'd like to discuss the issue of the Wang case. The government argues that Wang controls here. However, this case is different from Wang. In this case, the board issued a Bourbonno Affirmance, but expressly stated that only the combination of factors cited by the immigration judge were sufficient for the adverse credibility finding. Thus, if this court were to conclude that even one of the immigration judge's findings is not supported by substantial evidence, then the court must remand to the board. Well, I don't know. That doesn't seem to logically follow from what they said. What they said is that some of the deficiencies standing alone would be insufficient. That's not the same as saying that other insufficiencies would not be sufficient. Right. So they rely on a cumulative analysis. And in Wang, it's not clear there that the immigration judge was engaging in only a cumulative analysis. In Wang, it appears that the immigration judge was suggesting that each of the discrepancies could have supported the adverse credibility finding. And there, the board affirmed without opinion. So this court looked at the IJ's decision. And because it wasn't a cumulative analysis, this case is substantially different from Wang. So under, you know, if this case, since this case, the board didn't indicate which factors were deficient and which were critical to that cumulative finding, it wouldn't be appropriate for this court to speculate about what grounds the BIA thought were merely incidental. To do so would violate the principle of a judicial judgment cannot be made to do service for an administrative judgment. And so, you know, this court can't act as the first adjudicator and say, okay, if we throw out three of these issues, you know, we can't speculate as to how the board might then reconsider the credibility analysis. I'd also just like to point out that the government talks about some of the omissions and some of the documents. But in the Wang case, actually, they talk about how omissions and documents is not sufficient to support an adverse credibility finding. The judge can't speculate about what an official death certificate, for example, might look like, whether or not an Indian death certificate would include the cause of death. And so because there was nothing in the record about what a death certificate might include, the fact that it omitted that fact should not be sufficient and is not substantial evidence to support the adverse credibility finding. And I'd also just like to point out. Over time. Oh, I'm sorry. Number is going up. Thank you, Your Honor. Thank you. Thank both counsel for the argument. The case just argued is submitted.
judges: Hug, Roth , Clifton